520 A.2d 1110

**Randel S. SYME**

v.

**MARKS RENTALS, INC. t/a Thrifty Rent-A-Car.**

**No. 669, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 6, 1987.

M. King Hill, III (Cook, Howard, Downes & Tracy, on brief), Towson, for appellant.

Ronald B. Katz (Weinberger, Weinstock, Sagner, Stevan & Harris, on brief), Baltimore, for appellee.

Argued before WEANT, BISHOP and GARRITY, JJ.

BISHOP, Judge.

Appellee, Marks Rentals, Inc. t/a Thrifty Rent–A–Car, (Marks Rentals) filed suit against appellant, Randal S. Syme, in the District Court of Maryland for Baltimore County, seeking recovery for damage to a Toyota Corolla that Marks Rentals rented to Syme. Syme requested a jury trial, and the case was removed to the Circuit Court for Baltimore County, where both parties filed motions for summary judgment. The trial judge granted Marks Rentals' motion for summary judgment and denied the motion of Syme. After a premature appeal was dismissed and Syme's motion for reconsideration was denied, Syme filed this appeal, asking:

I. Is the Physical Damage Waiver provision of a rental car contract voided by lessee's unintentional violation of a traffic ordinance?

II. Is the language in the rental contract, restricting the Physical Damage Waiver, unconscionable so as to require judgment for Syme as a matter of law?

III. Is Marks Rentals's supporting affidavit so deficient as to require denial of its motion for summary judgment?

IV. Did Syme's affidavit place material facts at issue so as to require denial of Marks Rentals' summary judgment?

## FACTS

On March 10, 1985, Randel S. Syme entered into a rental agreement with Marks Rentals for a 1984 Toyota Corolla. At that time, a rental agent of appellee reviewed the terms of the rental agreement and suggested that appellant purchase car "insurance", to which the agreement referred as Physical Damage Waiver (PDW). According to the agent's representations, the purchase of PDW would protect appel-

lant from all liability resulting from "collision or upset" damage to the rental automobile. Without the coverage under PDW, Syme remained personally liable for the first $1,500.00 of damage. Based on these representations, appellant purchased PDW for $6.95 per day with the expectation that his premium fully protected him from liability, even if his negligence or error was the cause of the property damage to the car.

On March 13, 1985, while driving the rental car, Syme was involved in an accident at the intersection of Satyr Hill Road and Perring Parkway in Baltimore County. Pursuant to the investigation, the Baltimore County Police Department issued to appellant a traffic citation, which he elected to pay rather than contest in court.

Immediately after the accident, when appellant reported the accident by phone, appellee's rental agent advised him to return the damaged vehicle and pick up a substitute rental car. Because he had purchased PDW, appellant was informed that Marks Rentals would not hold him accountable for the property damage to the rental car. On the next day, Syme and his brother Edmund Syme exchanged the damaged vehicle for another. At that time, Syme informed appellee's agent that the police had issued him a traffic violation at the time of the accident. The agent again informed appellant that he was not responsible for the property damage.

Several months later, Marks Rentals requested appellant to make restitution for the property damage because Syme's traffic violation voided his coverage under PDW. On November 12, 1985, Marks Rentals filed a complaint seeking $3,603.69 in damages.

### Summary Judgment

The Maryland Rules provide that "[a]ny party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to

judgment as a matter of law." Md. Rule 2–501(a). In interpreting the scope of this rule, courts in Maryland have admonished repeatedly that "the summary judgment procedure is not a substitute for a trial, but a means by which the trial court may determine, summarily, whether a trial is necessary." *Washington Homes, Inc. v. Interstate Land Development Company, Inc.*, 281 Md. 712, 716, 382 A.2d 555 (1978); *accord Coffey v. Derby Steel Company*, 291 Md. 241, 247, 434 A.2d 564 (1981); *Metropolitan Mortgage Fund, Inc. v. Basiliko*, 288 Md. 25, 28, 415 A.2d 582 (1980); *Peck v. Baltimore County*, 286 Md. 368, 381, 410 A.2d 7 (1979); *Maloney v. Carling Breweries, Inc.*, 52 Md.App. 556, 560, 451 A.2d 343 (1982); *Egypt Farms v. Lepley*, 49 Md.App. 171, 176, 430 A.2d 122 (1981); *Vanhook v. Merchants Insurance Company*, 22 Md.App. 22, 25, 321 A.2d 540 (1974).

When ruling on a motion for summary judgment, the trial court must address two separate issues: whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and whether the movant is entitled to judgment as a matter of law. Md. Rule 2–501(e). In resolving the first issue of whether a material fact remains in dispute, the Court of Appeals has indicated that the court must accord great deference to the opposing party against whom the motion for summary judgment has been filed. First, the court should not attempt to resolve any issue of fact or of credibility of witnesses; the resolution of such matters should be left to the trier of fact. *Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 325–26, 389 A.2d 887 (1978); *Wolfe v. Lamar & Wallace, Inc.*, 261 Md. 174, 177–78, 274 A.2d 121 (1971); *White v. Friel*, 210 Md. 274, 279–80, 123 A.2d 303 (1956). Second, the Court has embraced a broad interpretation of what constitutes a genuine dispute of fact to include disputes both over facts and factual inferences:

even where the underlying facts are undisputed, if those facts are susceptible of more than one permissable infer-

ence, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact.

*Fenwick Motor Company v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256 (1970); *accord McDonald v. Burgess,* 254 Md. 452, 454, 255 A.2d 299 (1969); *Reeves v. Howar,* 244 Md. 83, 90, 222 A.2d 697 (1966). And finally, the court must resolve all inferences against the party who seeks the disposition of the case on summary judgment. *Honaker v. W.C. & A.N. Miller Development Company,* 285 Md. 216, 231, 401 A.2d 1013 (1979); *McDonald v. Burgess,* 254 Md. 452, 454, 255 A.2d 299 (1969).

Even under this deferential standard, we conclude that the trial court was correct in ruling that no genuine dispute existed as to the material facts in the instant case. In particular, the parties are in agreement that they entered into a rental agreement; that Syme opted for PDW coverage; that the police issued a traffic citation to Syme at the time of the accident; and even that an agent for Marks Rentals made oral representations to Syme that the purchase of PDW coverage insured Syme against liability for damages to the rental automobile, regardless of fault.

The outcome of this case thus turns on the second issue, i.e. whether the contract language in the rental agreement was so unambiguous that the trial court could rule as a matter of law in favor of the moving party. To resolve this issue, we must examine the relevant language in the rental agreement. Paragraph 14 of the agreement indicates that coverage under PDW is not absolute, but is subject to conditions of paragraph 11. Paragraph 14 provides in pertinent part:

Responsibility for Damages. I am responsible and will pay you for all loss of and damage to the vehicle regardless of who is at fault. Only if the vehicle is operated in accordance with all of the provisions of Paragraph 11, my responsibility for Collision or upset damages shall:

(a) Not exceed the amount shown in the area labeled "Physical Damage Responsibility", on Page 2, if I initialed the box labeled "I do not accept" at the time of the rental.

(b) Zero if I initialed the box labeled "I accept" in the area labeled "Physical Damage Responsibility" at the time I rented the vehicle and agreed to pay the additional charge.... Only if the vehicle is operated in accordance with all the provisions of Paragraph 11, I will not be liable for accidental loss or damage ... that are normally covered by comprehensive physical damage insurance policy.

From the plain meaning of this language, the import is clear and unambiguous: if the renter accepts and pays for PDW, the liability for damage is waived, provided that the renter operates the vehicle in accordance with all of the provisions of paragraph 11. Appellee contends that appellant violated paragraph 11(f), which provides that PDW coverage becomes invalid if the operator uses the rental car "for any illegal purpose." The point of contention between the parties revolves around the meaning of the phrase "for any illegal purpose," specifically whether a traffic violation falls within the purview of paragraph 11(f). The circuit court ruled that, as a matter of law, provision 11(f) conditions Syme's coverage under PDW upon his compliance with all traffic laws. Since Syme admitted that he had violated a traffic ordinance, the court entered a judgment against him for $3,603.69 plus attorney's fees.[1]

This Court takes no exception to the trial court's conclusion that the contractual term "illegal purposes" possessed sufficient specificity for the court to construe it as a matter of law. *Compare DeJarnette v. Federal Kemper Insurance Company*, 299 Md. 708, 714–22, 475 A.2d 454 (1984) (finding unambiguous the phrase "use of a motorcycle") *and Fisher v. Tyler*, 284 Md. 100, 110–12, 394 A.2d 1199

---

1. The agreement clearly set out that Syme's responsibility if he failed to take the PDW would not exceed $1,500.00.

(1978) (finding unambiguous the term "loan") *and Aragona v. St. Paul Fire and Marine Insurance Company*, 281 Md. 371, 374–75, 378 A.2d 1346 (1977) (finding unambiguous the phrase "any dishonest, fraudulent, criminal ... act .. of [a] partner") *with St. Paul Fire and Marine Insurance Company v. Pryseski*, 292 Md. 187, 196–98, 438 A.2d 282 (1981) (finding ambiguous the term "occurrence") *and Truck Insurance Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 433, 418 A.2d 1187 (1980) (finding ambiguous the phrase "operate under this Thrifty Rent–A–Car franchise") *and Government Employees Insurance Company v. DeJames*, 256 Md. 717, 719–25, 261 A.2d 747 (1970) (finding ambiguous the term "collapse"). We, however, conclude that the trial court failed to apprehend the proper meaning of the language when it construed the term "illegal purposes" as including simple traffic violations.

We do not agree with the trial court's construction for several reasons. First, negligent or accidental conduct that results in the issuance of a traffic citation lacks the requisite degree of intentional or goal-oriented behavior that the term "illegal purposes" connotes. Reference to the common meaning of "purpose" bears out this conclusion. One of the dictionary definitions of "purpose" is

> something that one sets before himself as an object to be attained ... [a] design, an object, effect, or result aimed at, intended or attained.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1847 (1971). From this definition, it is clear that purposive behavior includes only that in which the individual possesses an aim, objective or intent. Clearly, a traffic violation resulting from the negligent operation of a motor vehicle falls outside the ambit of purposive conduct.

Second, although no court in Maryland has had the opportunity to construe the term "illegal purposes", courts in other jurisdictions have recognized that the term requires some evidence of intentional conduct on the part of the actor. *190 Stanton Inc. v. Santiago*, 60 Misc.2d 224, 302 N.Y.S.2d 693, 695 (1969) (holding that for a tenant to use

housing accommodation for illegal or immoral purpose, it must appear that premises were "kept or maintained for such a purpose" and "this imports, not an isolated act, but some measure ... of continuity and permanence"); *Cohen v. Walker,* 194 Misc. 137, 86 N.Y.S.2d 519, 520 (1949) (holding that unlawful practice of denistry constitutes an illegal purpose); *Cf. Ferguson v. State,* 301 Md. 542, 552, 483 A.2d 1255 (1984) (holding that purposeful and flagrant misconduct includes dragnet operations, pretextual arrests, investigatory arrest without probable cause "in the hope that something would turn up"; investigatory "arrest was purposeful because it was *aimed* at investigation" (emphasis added)). Moreover, courts have uniformly adopted the lexical definition, as set out above, that defines the actor of purposeful conduct as possessing an aim, object, or intent. *Roach v. Churchman,* 431 F.2d 849, 854 (8th Cir.1970) (adoption of insurer's contention that the "unlawful purpose" exclusion incorporates every violation of FAA regulation would lead to an absurdity); *Glaspey & Sons, Inc. v. Conrad,* 83 Wash.2d 707, 521 P.2d 1173, 1175 (Wash.1974) (definition of "purpose" as "an object, effect, or result aimed at, intended or attained"); *Andresen v. Board of Supervisors,* 235 C.A.2d 436, 442, 45 Cal.Rptr. 306 (1965) (" 'purpose' is synonymous with the ends sought, an object to be attained, an intention ..."); *Sawter v. Shoenthal,* 81 N.J.Law 197, 80 A. 101, 101–02 (1911) ("purpose" is something placed before the mind as an aim or desideratum).

We hold that the trial court's interpretation of the phrase "for illegal purposes" was overly broad when it construed the term "illegal purposes" to include negligent or inadvertent conduct that results in a traffic citation. As a matter of law, such conduct falls outside the ambit of the term's meaning.[2] Since there is no evidence that Syme exhibited intentional conduct to drive his car for any illegal purpose,

---

2. Operating an automobile for "illegal purposes" and operating an automobile in an "unlawful manner" are not synonymous. The first requires an intent which the latter lacks.

we further hold the court should have found, as a matter of law, the PDW coverage was effective to protect Syme and should have entered a summary judgment in favor of Syme.

In an attempt to give the term "illegal purposes" a broader meaning that includes negligent conduct, Marks Rentals suggests that we should read paragraph 11 in conjunction with paragraph 12. Paragraph 12 states:

> Illegal Uses of Vehicle. I agree that it shall be a violation of this Agreement if the vehicle is used in violation of any laws or ordinances applicable to the operation, use, or return of the vehicle.

Appellee's reliance on paragraph 12, however, is unjustified. First, the agreement sets out renter's physical damage responsibility in paragraph 14, which is the paragraph referenced in the selection block located on the face of the agreement. This paragraph makes reference only to paragraph 11 and not to paragraph 12. Moreover, paragraphs 11(f) and 12 speak in different terms: the former in terms of "illegal purposes", the latter in terms of "illegal uses". From this disparity, the reasonable inference that this Court must draw is that paragraphs 11 and 12 are unrelated and should not be read together.

Second, to construe PDW provision as Marks Rentals suggests would produce an unconscionable result. *Cf. Roach*, 431 F.2d at 853–54. In assessing the unconscionability of a contractual provision, a nonexclusive list of factors that a court should consider includes: (1) a standardized agreement executed by the parties of unequal bargaining strength; (2) lack of opportunity to read or become familiar with document before signing it; (3) evidence that the contractual provision was commercially unreasonable or its unreasonable interpretation would not be anticipated by the ordinary consumer; (4) substantive unfairness of the terms of the contract; (5) impact of the relationship of the parties on assent, unfair surprise and notice; and (6) all the circumstances surrounding the formation of the contract including its commercial setting, purpose and effect. *See Davis v. M.L.G. Corporation,* 712

P.2d 985, 991 (Colo.1986); RESTATEMENT (SECOND) OF CONTRACTS § 208 (1979); 17 AM.JUR.2D *Contracts* § 193 (1964).

Although it is unnecessary to decide the unconscionability issue in the instant case, we think that appellee's construction of PDW provision would work an unconscionable result. Clearly, consumers like Syme elect PDW coverage with the reasonable expectation that if they are involved in an automobile accident, they are protected from damage liability, regardless of fault. To permit the insertion of technical language in a standard form contract that would nullify PDW coverage whenever the operator's simple negligence results in a traffic violation defeats the purpose of purchasing such coverage. *See Davis,* 712 P.2d at 992 (holding PDW provision contained in rental agreement restricted the rights of the consumer in an unconscionable manner); *Automobile Leasing & Rental, Inc. v. Thomas,* 100 Nev. 261, 679 P.2d 1269 (1984) (determining that PDW provision would mislead consumers into believing that they were covered "in virtually all cases" and thus it would be unfair to construe that provision to the contrary).

JUDGMENT REVERSED;

COSTS TO BE PAID BY APPELLEE.