*430 NAZARIAN, J.,
concurring.
I join the Court’s opinion, and write solely to express a slightly different view about where this opinion leaves the state of the law going forward. In my view, and in a break with the majority’s, see op. at 424 n.10, 120 A.3d at 908 n.10, the fact that Mr. Erdman was the driver is significant to the analysis of this case because that is the fact that breaks the proximate-causal chain. Our holding here, and the source of the duty we have identified, distinguishes this situation from the typical dram shop or social host case in a way that could matter in another case with slightly different facts.
In the dram shop and social host liability cases the majority correctly discusses, the analytical path between a duty and the injury at issue is interrupted by an intervening decision, almost always the drinker’s decision to drive. In Warr v. JMGM Group, LLC, 433 Md. 170, 70 A.3d 347 (2013), to cite only the most recent example, the Court of Appeals “decline[d] to impose dram shop liability on Dogfish Head [Alehouse] in the absence of any duty owed to the Warrs,” the survivors of the driver the Alehouse’s customer hit and killed on his way home. Id. at 177, 70 A.3d 347. The Court held— reiterated, really—that “[a] tavern owner who provides alcohol to an intoxicated patron does not exercise control over the conduct of the patron, in driving or walking, for example,” and that “regardless of any foreseeability, a duty does not exist to the general public, with respect to harm caused by a third party, absent the existence of a special relationship between the person sued and the injured party or the person sued and the third party.” Id. at 183-84, 70 A.3d 347. These principles are nothing new, and our courts have applied them consistently in both the dram shop, see, e.g., State v. Hatfield, 197 Md. 249, 254-55, 78 A.2d 754 (1951); Wright v. Sue & Charles, Inc., 131 Md.App. 466, 478, 749 A.2d 241 (2000), and social host contexts. See, e.g., Hebb v. Walker, 73 Md.App. 655, 658-59, 536 A.2d 113 (1988).
Unlike the typical dram shop or social host case, however, this case does not fail for lack of a duty. To the contrary, we *431 now have held, and I wholeheartedly agree, that Steven Dankos[1] was a member of the class the General Assembly intended Md. Code (2002, 2012 Repl. Vol.), § 10-117 of the Criminal Law Article (“CL”) to protect, and that the Statute or Ordinance Rule imposed a duty of care on Ms. Stapf. op. at 415-21, 120 A.3d at 903-07. Ms. Stapf had a duty not to serve him alcohol knowingly in her home, and she indisputably breached that duty. Nor was that duty vitiated, in my view, by Steven’s decision to drink. Steven was a minor, and a minor to whom Ms. Stapf owed a duty, grounded in statute, not to serve him in the first place. So again, to the extent that the historic dram shop analysis severs the analysis at the drinker’s decision to drink, see op. at 423-24, 120 A.3d at 907-08, the source and nature of the duty we have recognized here flowed from Ms. Stapf to Steven precisely because he drank alcohol in her house with her knowledge. And in light of the specific scope of CL § 10-117 and the narrow class it protects, the General Assembly has already distinguished this case from Hatfield in that regard. See op. at 424-25, 120 A.3d at 908-09.
It is not enough, though, just to find a duty. This case fails because Ms. Stapfs breach of her duty to Steven was not the proximate cause of his death. Instead, the proximate cause of his death was the intervening decision by Mr. Erdman—an adult, to whom Ms. Stapf did not owe the same duty—to drive drunk with Steven in the bed of his truck. But in another case—if, for example, a minor drank to the point of alcohol poisoning, or perhaps was injured in a drunken fall in the server’s house—the causal connection between the service of alcohol and the minor’s injuries might justify a different result. That case obviously must await another day, but I understand our opinion in this ease to leave open that possibility within this narrow analytical space.

. I will follow the majority’s pattern of referring to Steven by his first name.